IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James Michael Lucas, #276323, | ) | C/A No.: 1:12-2879-TMC-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael McCall, Warden of Lee | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner James Michael Lucas is an inmate at the Lee Correctional Institution of the South Carolina Department of Corrections who filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on October 1, 2012 [Entry #1], as amended February 21, 2013 [Entry #23]. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [Entry #30, #31]. The matter having been fully briefed [Entry #40], it is ripe for disposition.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.[1]

---

[1] Petitioner also filed a motion to place his three volume appendix into evidence to support his petition. [Entry #28]. Because the appendix was docketed by the State as attachments to its return [Entry #30], Petitioner's motion is denied as duplicative of the record. The Clerk is instructed to return the three volume appendix to Petitioner.

I.    Factual and Procedural Background

Petitioner was indicted by the Lexington County grand jury during the April 2001 term of court for murder after he shot his 14-year old girlfriend ("Victim") through the head with a rifle in her bedroom (2001-GS-32-1182). [Entry #30-18 at 63–64].  At trial, the defense introduced evidence, through the Victim's mother, DiAnn Spurck, that Petitioner had shot the Victim accidentally while cleaning his rifle. Petitioner was represented by Robert T. Williams Sr., Esq., at trial June 26–28, 2001, before the Honorable R. Markley Dennis, Circuit Court Judge. [Entry #30-12 at 3 *et seq.*]. Petitioner was found guilty of murder [Entry #30-15 at 123], and Judge Dennis sentenced him to life imprisonment. [*Id.* at 133].

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). On appeal, Petitioner was represented by Joseph L. Savitz III, Esq., of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed an *Anders*[2] brief [Entry #30-1] raising the following issue, "The judge erred by furnishing the jury with a yardstick for use during their deliberations." [*Id.* at 4]. Counsel filed a petition to be relieved, affirming that the appeal was without merit sufficient to warrant a new trial. [*Id.* at 8].  Petitioner filed a pro se brief on May 15,

---

[2] *Anders v. California*, 386 U.S. 738, 744 (1967), requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.

2002, asserting: "Did the court err in refusing a directed verdict in favour of appellant on murder charge under statute § 16-3-10." [Entry #30-2 at 4]. On February 5, 2003, the Court of Appeals dismissed the appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Williams*, 406 S.E.2d 357 (S.C. 1991). [Entry #30-3]. The remittitur issued on March 18, 2003. [Entry #30-4].

Through collateral counsel Tara Dawn Shurling, Esq., Petitioner filed an application for post-conviction relief ("PCR") on February 26, 2003 [Entry #30-15 at 134–140], as amended on October 10, 2005 [*id.* at 141–145], July 20, 2006 [*id.* at 146–147], and July 21, 2006 [*id.* at 148–149], that collectively raised 20 allegations of ineffective assistance of counsel.

A PCR evidentiary hearing was held before the Honorable Diane S. Goodstein, Circuit Court Judge, on November 28–29, 2006, at which Petitioner and Ms. Shurling appeared. [*Id.* at 155 *et seq.*] On May 29, 2007, Judge Goodstein filed an order of dismissal. [Entry #30-17 at 140–160].

On June 7, 2007, Petitioner filed a motion to alter or amend judgment [*id.* at 161–62], which was denied on August 7, 2007. [*Id.* at 166].

Petitioner timely appealed to the South Carolina Supreme Court, and through appellate counsel, M. Celia Robinson, Esq., filed an amended petition for writ of certiorari [Entry #30-5] on August 2, 2010, stating the following issues:

1.    Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel in failing to seek funds for the cost of retaining experts

and in failing to consult or retain experts where counsel's failure to present expert testimony prejudiced the defense and contributed to the negative result at trial?

2.    Did the PCR judge err in denying relief despite trial counsel's ineffectively failing to introduce the autopsy and coroner's reports which indicated that the shooting was accidental in evidence to the clear prejudice of the defense?

3.    Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel by failing to present evidence of petitioner's good character which prejudiced the defense?

4.    Did the PCR judge err in denying relief despite trial counsel's failure to object to the State's closing argument wherein the prosecutor commented on the defendant's failure to present witnesses as compared to the State's presentation of too many witnesses to count?

5.    Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel by failing to obtain or present evidence as to the use of the insurance policy or evidence to explain for the victim's father's looking at the policy after her death?

6.    Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel by failing to present evidence explaining petitioner's parents' allowing the victim's mother to stay in their home in an effort to protect the credibility of the defense and defense witness, DiAnn Spurck, to the prejudice of the defense?

7.    Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel by failing to present evidence of the State's witness's bad character to the prejudice of the defense?

[*Id.* at 3].

On January 7, 2011, the South Carolina Supreme Court granted certiorari and set a briefing schedule on all issues. [Entry #30-7].  After briefing [Entry #30-8, #30-9], the South Carolina Supreme Court filed an order on December 5, 2011, dismissing the

4

petition for writ of certiorari as having been improvidently granted. [Entry #30-10]. The remittitur issued on December 21, 2011. [Entry #30-11].

Petitioner filed this federal petition for a writ of habeas corpus on October 1, 2012 [Entry #1], as amended February 21, 2013 [Entry #23].

II.    Discussion

A.    Federal Habeas Issues

Petitioner states the following grounds in his habeas petition, as amended:

**Ground One:**    Ineffective assistance of counsel

(1)    Failed to introduce into evidence the autopsy and coroner's report to show accident.

(2)    Failed to seek funds for the costs of retaining experts and in failing to consult or retain experts, such as a crime scene expert and psychiatrist.

(3)    Failed to present evidence of use of insurance policy or evidence to explain the victim's father looking at the policy after her death.

(4)    Failed to present evidence of Petitioner's good character

(5)    Failed to present evidence of state witness Brenda Stevenson's bad character.

(6)    Failed to present evidence explaining why petitioner's parent allowed the victim's mother to stay in their home in an effort to protect the credibility of the defense and defense witness DiAnn Spurck.

(7)    Failed to object to State's closing argument where prosecutor commented on Petitioner's failure to present witnesses as compared to the state's presentation of too many witnesses to count.

(8)    Failed to object to an improper jury instruction, (preserve for appellate review), that had the effect of shifting the burden of proof by creating a rebuttable presumption of malice from the use of a deadly weapon.[3]

**Ground Two:**        Actual innocence.

[Entry #1-2, #23].

B.        Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id.* at 255.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

_____

[3] Petitioner withdrew this claim in his response. [Entry #40 at 34].

6

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the

proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The

unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.,* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

D.     Analysis

1.     Merits Review of Ineffective Assistance of Counsel Claims

a)     Autopsy and Coroner's Reports

Petitioner alleges that counsel was ineffective in failing to introduce the autopsy and coroner reports, arguing that they would have shown that his shooting of the Victim was an accident.  Petitioner states that "despite the fact that the autopsy report indicated that this was an accidental shooting, trial counsel testified that he would not have put that report in evidence because the autopsy report indicated the cause of death to be a gunshot wound to the head." [Entry #40 at 13].

The PCR court denied the claim, as follows:

This Court finds the reports were not necessary because they would have been cumulative to Dr. McMaster's testimony at trial about his findings, which were also based in part on the coroner's findings. (Trial tr. p.352, line 14–354, line 1.) Additionally, Dr. McMaster explained during his testimony at trial that the ["]accidental pending further investigation["] finding was based on all information given to him by police and others involved in the case and that nothing about the body itself made him determine the death was an accident, so the documents would not have had

the impact Applicant suggests. (Trial tr. p.351, line 12–p.354, line 1, p.357, line 24–p.358, line 21.) Therefore, Applicant's request for relief on this ground is denied.

[Entry #30-17 at 156].

At PCR, trial counsel testified that he did not consider introducing the autopsy or coroner's reports into evidence because he felt it was not necessary, stating, "I think that information came before the jurors. As I recall, they came before the jury that it was initially ruled accidental. . . . I think there was testimony about it from like the coroner or assistant coroner, I think." [Entry #30-16 at 22].

The trial record reflects that Dr. Kitt McMaster performed an autopsy on the Victim and testified as a forensic pathologist about his findings. [Entry #30-14 at 12–29]. Dr. McMaster testified that his opinion as to the manner of death, based on the information he was provided and his autopsy findings, was that it was "accidental, pending any further legal investigation." [*Id.* at 23].

Petitioner argues that the outcome of the trial would have been different if the reports had been entered into evidence because the jury would have remembered and been impressed by information in written form more that the oral testimony of the witness. [Entry #40 at 13].

Petitioner cannot satisfy the *Strickland* test. The court cannot find that there was a substantial likelihood the result of Petitioner's trial would have been different had trial counsel entered the reports into evidence. The undersigned finds that the autopsy and

10

coroner's reports would have been cumulative to Dr. McMaster's trial testimony. The findings reflected the death was "accidental, pending any further legal investigation," not accidental, as Petitioner suggests.[4]  Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams*, 529 U.S. at 410. Based on the foregoing, Petitioner is not entitled to federal habeas relief on this ground, and it is recommended that it be dismissed.

b)    Expert evidence

Petitioner alleges that counsel was ineffective in failing to seek funding for expert witnesses to assist the defense concerning (a) the crime scene and (b) Petitioner's mental state.

(1)    Crime scene experts

The PCR court denied the ineffective assistance of counsel claim as to the crime scene expert as follows:

> This Court concludes Applicant has failed to demonstrate deficient performance or resulting prejudice flowing from trial counsel's failing to call expert witnesses regarding the distance from which or the angle at which the fatal shot was fired. Trial counsel aptly explained intent was the

---

[4] The undersigned has been unable to locate the autopsy and coroner's reports in the record.  At PCR, Mr. Girndt testified that the first summary page listing the final autopsy diagnosis states "One, gunshot wound to the head. Two, toxicology studies, negative. Cause of death, gunshot wound to the head.  Manner of death, accidental."  Mr. Girndt confirmed that the more complete, last page of the autopsy report's case summary states "accidental, pending any legal investigation which may be indicated." [Entry #30-16 at 80–81].

primary question in this case. The defense attempted to show the gun was accidentally discharged while Applicant was cleaning it in his arms, essentially parallel to the ground. The State's evidence was that the shot was made at a downward angle of 15–20%. This evidence did not rule out the defense in that the angle was not very steep. Even two of Applicant's own experts admitted the shot was or appeared to be at a downward angle. (PCR tr. p. 80, line 19–p. 81, line 7, p. 152, line 4–p. 153, line 24.) Applicant presented insufficient evidence for this Court to conclude that the shot was not made at a downward angle or that the downward angle was less than the State's experts opined. This Court finds based on several of the autopsy photographs and Dr. McMaster's testimony regarding stippling, that Victim was indeed shot at a downward angle. Furthermore, Applicant did not produce sufficient evidence to challenge the distance of the shot estimated by the State's experts. Applicant, having failed to meet his burden of proving counsel was deficient or that but for his conduct, the outcome of the trial would have been different, is hereby denied relief on this ground.

[Entry #30-17 at 149–50].

Dr. McMaster testified that the shot had been fired from a distance of two to four feet at a 15–20% downward angle. [Entry #30-14 at 14–18]. Agent Jennifer Stoner of the South Carolina Law Enforcement Division (SLED) testified that the stippling in the photographs of the victim was consistent with the results of her three-foot test firing. [*Id.* at 44–48]. SLED agent Steven Derrick testified that his investigation led him to believe the gun was shot between three and four feet from the Victim's face. [*Id.* at 81–82].

At PCR, Petitioner's firearms examination expert, Kelly Fite, testified that the shot had been fired at a slightly downward angle [Entry #30-16 at 66–67], and Petitioner's crime scene/bloodstain expert Donald Girndt testified that the State's evidence at trial correctly estimated the likely position of the victim at the time of the shot [*id.* at 73].

Most significantly, Girndt admitted that nothing in the crime scene photographs he examined could establish that the shooting had been an accident, although it was not inconsistent with an accident. [*Id.* at 81].

At PCR, Petitioner also presented the testimony of forensic pathologist Carol McMahon. Dr. McMahon criticized Dr. McMaster's report for lacking the specificity she thought necessary to make an accurate measurement [*id.* at 128–135], but admitted that she could not dispute Dr. McMaster's findings and that, based on the photographs, the exit wound on the back of the neck did appear to be lower than the entry wound on the forehead [*id.* at 138–139, 149].

At PCR, trial counsel testified that he did not think it was necessary to request funds for experts or to retain experts for the case because he believed the primary issue in the case was the question of Petitioner's intent when he shot the Victim. [Entry #30-15 at 164]. Trial counsel testified that although he was retained, the family did not have much money, but that he did not believe money was the deciding factor in not retaining an expert. [*Id.*]. Trial counsel testified that if it had been necessary to retain an expert, he believed Petitioner's parents would have attempted to find the funds to retain one. [*Id.* at 165]. Trial counsel stated that even if he had known that he could have applied for indigent funds in a case for which he was retained, it probably would not have changed anything because he felt the State's experts actually helped Petitioner because their

testimony seemed to allow for the possibility that the Victim's shooting was an accident. [*Id.* at 166–Entry #30-16 at 1].

Petitioner argues in his response that "counsel freely admitted that he had not consulted with an expert in order to understand the importance of the scientific evidence." [Entry #40 at 16].   Petitioner argues that his trial counsel should have consulted with experts "in order to effectively rebut any scientific evidence presented by the State" [*id.*], but Petitioner does not articulate how such consultation would have impacted his case.  At trial and at PCR, Petitioner (through counsel) did not deny having shot the Victim, but only denied that it was intentional.  Petitioner has not shown how more or different scientific evidence about the angles, trajectory, ammunition size, blood splatter, and distance from impact would have been helpful to prove that he accidentally, rather than intentionally, shot the Victim.

Trial counsel articulated valid strategic reasons for his decision not to seek funds for and for not retaining an expert. Courts are instructed not to second guess an attorney's trial strategy and tactics. *Stamper v. Muncie*, 844 F.2d 170 (4th Cir.1991); *Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir.1977). Counsel cannot be judged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." *Darden v. Wainwright*, 477 U.S. 168, 169 (1986).

The foregoing review of the expert testimony Petitioner presented at PCR corroborated most of the testimony of the State's trial experts and did not significantly

contradict them. Therefore, the court agrees with Respondent that Petitioner has failed to show that by retaining experts, the outcome of the trial would have been different.

(2)    Mental health expert

Petitioner alleges that trial counsel was ineffective in not retaining a psychiatrist to explain Petitioner's relationship with the Victim and his actions after the shooting.  After the shooting, Petitioner left the house, hid the gun in a wooded area, went to another house to call 911, provided a false name, told the operator that he did not remember how Victim was hurt, and that only an ambulance, and no police were needed. Petitioner claims that a psychiatrist could have explained his behavior after the shooting, which otherwise made him appear guilty.

The PCR court denied the claim as to Petitioner's mental state as follows:

> Upon careful consideration of the entire record, this Court finds and concludes Applicant has failed to demonstrate trial counsel was deficient in failing to hire and present the testimony of a psychiatrist. Counsel's explanation that he would not want to open up the question of Applicant's character constitutes valid trial strategy for not calling such a witness. Furthermore, this Court agrees with counsel's assessment that the testimony was not particularly helpful on any of the issues he discussed. In essence, Dr. Martin accepted Applicant at face value and did not consider evidence that was contrary to Applicant's position. He did not, for example, discuss the relationship between Applicant and Victim with Victim's sisters. Although this Court in no way questions Dr. Martin's veracity or professionalism, this Court has serious concerns regarding the manner and means by which Dr. Martin draws his conclusions. Therefore, this Court concludes Applicant has failed to establish a reasonable probability that had trial counsel presented psychiatric testimony, the outcome of his trial would have been different. Accordingly, Applicant's request for relief on this ground is denied.

15

[Entry #30-17 at 152].

At PCR, Petitioner presented the testimony of psychiatrist Thomas Martin to support his claims. Based on his interview with Petitioner and after reviewing Petitioner's records, Dr. Martin testified that Petitioner's intellectual, educational, and social difficulties made it easier to understand and explain why he would have been involved with the 14-year old Victim. [Entry #30-16 at 93–99]. Dr. Martin testified he came to learn that Petitioner and Victim had a loving and nurturing relationship, but admitted all he learned about Victim, he learned from Petitioner and his parents. [*Id.*] He did not interview the Victim's sisters, both of whom testified at trial that Petitioner was abusive toward Victim. [Entry #30-13 at 108–109, 114–116]. Dr. Martin testified he learned that Petitioner had been using drugs, and that he believed Petitioner was shocked, horrified, and panicked after the shooting, thereby accounting for claiming a false identity with the 911 operator.  Dr. Martin testified that Petitioner was concerned because he knew the gun was stolen, thereby explaining why he hid the gun in the neighbor's yard.  [Entry #30-16 at 104–105].  Dr. Martin testified he was impressed that Petitioner made some sort of rescue effort and noted that he returned to the scene, which he interpreted to mean that he was not worried about being caught. [*Id.* at 105–107].

At PCR, trial counsel testified that he was concerned that presenting psychiatric testimony regarding Petitioner would have opened up questions about Petitioner's character.  Trial counsel stated that he did not believe evidence that Petitioner suffered

from impulsiveness and hyperactivity and reports about his social adjustment and suspensions in school would have been helpful before a Lexington County jury. [Entry #30-17 at 13–15]. He also expressed concern that presenting evidence attempting to justify that a 24- year old man was having a relationship with a 14-year old girl would not have helped engender the jury's sympathy.  Further, he was concerned over trying to explain that Petitioner's reason for hiding the gun was not because he had intentionally committed murder, but because he had stolen the gun while on drugs—a subject that he believed would only open the door to the discussion of character and further damaged Petitioner's case. [*Id.* at 13–15].

The court agrees with Respondent that trial counsel articulated a valid strategic reason for not attempting to introduce psychiatric testimony because he felt it would have opened up Petitioner's character, prior bad acts, and theft of the gun. [*Id.* at 14]. The undersigned finds that the state court did not unreasonably apply the mandates of *Strickland* in denying Petitioner's claim. Further, Petitioner failed to establish a reasonable probability that had trial counsel presented psychiatric testimony, the outcome of his trial would have been different.

c)    Evidence concerning the insurance policy

Petitioner alleges that counsel was ineffective in failing to present evidence of the use of the insurance policy on the Victim's life or evidence to explain that the Victim's father was looking at the policy shortly after her death.

17

The PCR court denied the claim, as follows:

> Although the funeral receipt demonstrates the funeral expenses were more than the $5,000 face value of the life insurance policy, it also shows Victim's grandmother paid for the funeral, whereas Victim's mother was the beneficiary on the policy. Additionally, the policy paid double indemnity if the death was accidental. (Trial tr. p. 484, lines 13–21.) The funeral receipt added nothing to Applicant's case that was not already presented by counsel at Applicant's trial. This Court finds counsel was not deficient in failing to introduce the funeral records. As to Applicant's question as to why trial counsel did not call Victim's mother to corroborate Victim's mother's testimony about the insurance proceeds, this Court notes that Applicant presented no sufficient evidence regarding what she would have testified to if counsel had called her as a witness. Therefore, Applicant cannot show ineffectiveness on this issue. Accordingly, Applicant's request for relief is denied on this ground.

[Entry #30-17 at 153].

The undersigned finds that the state court did not unreasonably apply the mandates of *Strickland* in denying Petitioner's claim.  At PCR, trial counsel testified that the Victim's mother had already testified that the insurance proceeds went to pay for the Victim's funeral. Further, trial counsel testified that he had known Victim's father for at least 15 years prior to the shooting and was certain that the father's looking at the Victim's life insurance policy so soon after her death would not have been unusual for him. [Entry #30-16 at 7–9].

The court cannot find that there was a substantial likelihood the result of Petitioner's trial would have been different had trial counsel presented evidence of the insurance policy or evidence that the Victim's father was looking at the policy after her death. If the father had shot the Victim, then his looking at the policy could have arguably

18

gone to motive, but that was not the case here. There was no dispute that Petitioner shot the Victim. As trial counsel stated, the question was that of intent. [Entry #30-15 at 164]. Evidence that the Victim's father had been looking at the insurance policy would not have aided Petitioner's argument that his shooting of the Victim was accidental.

Petitioner appears to argue that trial counsel should have introduced evidence to show that most of the insurance money was used for the Victim's burial, thereby rehabilitating Petitioner's only witness, the Victim's mother. [Entry #40 at 28]. However, as the PCR court noted, the funeral receipt demonstrates the funeral expenses were more than the $5,000 face value of the life insurance policy and showed that Victim's grandmother paid for the funeral, although Victim's mother was the beneficiary. [Entry #30-17 at 153]. Petitioner has failed to meet his burden under *Strickland*, therefore his claim of ineffective assistance of counsel on this ground should be dismissed.

### d)     Evidence of Petitioner's good character

Petitioner alleges that counsel was ineffective in failing to present evidence of Petitioner's good character.

The PCR court denied the claim, as follows:

Applicant asserts trial counsel should have called witnesses to testify on his behalf regarding his reputation for nonviolence. Applicant presented witnesses to support his allegation. Trial counsel testified he did not consider bringing in evidence of Applicant's good character because he did not want to open the door to evidence of Applicant's bad character. (PCR tr. p. 205, line 21–p. 206, line 12.) For example, counsel did not want to risk evidence of Applicant breaking into places or to risk evidence of the DSS investigation about his sexual relationship with Victim coming into

19

> evidence. (PCR tr. p. 206, lines 8–12, p. 210, line 13–p. 212, line 8.) Trial counsel's decision was based on a valid trial strategy to avoid evidence of Applicant's bad character from coming into evidence. Counsel was not deficient. Therefore, Applicant's request for relief on this ground is denied.

[Entry #30-17 at 153–54].

At PCR, trial counsel testified that he did not consider submitting evidence of Petitioner's good character because he did not want to open the door to damaging evidence of Petitioner's bad character [*id.* at 26–27], including evidence of his prior bad acts [*id.* at 26–27, 47], and about his sexual relationship with the minor Victim [*id.* at 43]. Petitioner had convictions for burglary 2nd, breaking and entering a motor vehicle, and petit larceny. [Entry #30-15 at 130]. Trial counsel noted that he has "had a lot of people charged with solicitation to commit murder who get probation. But if you have sex with minors, then you are treated a whole lot worse." [Entry #30-17 at 4–3].

Petitioner cannot satisfy the *Strickland* test. The court concurs with the PCR court's finding that trial counsel's strategic decision not to call general good character witnesses was objectively reasonable. As a result of counsel not placing Petitioner's good character at issue, the jury was not presented with evidence of his criminal record. The court finds Petitioner did not establish deficient performance by trial counsel for not calling character witnesses. Furthermore, Petitioner has failed to show prejudice under *Strickland* by demonstrating that the result would have been different if trial counsel had called the character witnesses.

Based on the foregoing, Petitioner is not entitled to federal habeas relief on this ground and it is recommended that it be dismissed.

e)    Evidence of Brenda Stevenson's bad character

Petitioner alleges that counsel was ineffective in failing to present evidence of Brenda Stevenson's bad character.

The PCR court denied the claim, as follows:

> Applicant asserts trial counsel should have attacked the credibility of State's witness, Brenda Stevenson, with evidence that she defrauded various people. Applicant presented the testimony of his grandmother that she paid Brenda Stevenson $50 because Stevenson was going to help Applicant get a disability check, but Applicant did not receive disability payments and she did not receive her money back. (PCR tr. p. 179, line 16, p. 180, line 1.) Trial counsel testified he would not have introduced evidence that Applicant's family was attempting to commit a federal violation by getting him disability payments he was not entitled to receive. (PCR tr. p. 202, lines 8– 17.) First, this Court finds trial counsel's strategy was valid. Second, if Applicant had sought to impeach Stevenson with this evidence at trial he would have had to do so through cross-examination of her rather than through extrinsic evidence as is required by Rule 608(b), SCRE. Because Applicant did not present the cross-examination testimony of Stevenson before this Court, he has failed to establish her credibility could have been properly attacked on this ground. Therefore, Applicant's request for relief on this ground is denied.

[Entry #30-17 at 154].

Petitioner asserted that Williams should have more aggressively attacked Stevenson's credibility. At PCR, trial counsel testified that he would not have introduced evidence that Petitioner and his family were attempting to commit a federal violation by

obtaining disability payments he was not entitled to receive, as it was a two-edged sword that tied Petitioner into the misdeeds. [*Id.* at 23].

The court finds that trial counsel articulated valid strategic reasons for not introducing evidence of Stevenson's bad character. Petitioner has not established deficient performance by trial counsel on this ground. Furthermore, Petitioner has failed to show prejudice under *Strickland* by demonstrating that the result would have been different if trial counsel had called the character witnesses.

Based on the foregoing, Petitioner is not entitled to federal habeas relief on this ground and it is recommended that it be dismissed.

> f)    Evidence that DiAnn Spurck stayed with Petitioner's parents

Petitioner alleges that counsel was ineffective in failing to present evidence that the Victim's mother stayed with Petitioner's family after the Victim's death. Petitioner argues that trial counsel should have called his parents, Debbie and Milo Lucas, to testify as to why they allowed the Victim's mother to stay in their home for a period of time following the shooting, which he claims would have protected the defense's credibility and that of the Victim's mother.

The PCR court denied the claim, as follows:

Applicant asserts trial counsel should have called his parents to testify why they allowed Victim's mother to stay in their home for a period of time following the shooting. Milo Lucas testified Victim's mother needed a place to stay and they were simply taking care of her. (PCR tr. p. 181, lines 17–25.). Debbie Lucas testified similarly, but added that Victim's mother

22

was an eyewitness in Applicant's case and the Lucases wanted to make sure she was around when the case was called for trial. (PCR tr. p. 183, lines 17–25.) Trial counsel explained [he] did not believe the testimony of Applicant's parents would have been helpful at trial because it was clear they had an interest in preserving Victim's mother's testimony. (PCR tr. p. 203, lines 2–10.) This Court does not find counsel's decision deficient nor does it find the testimony Applicant's parents offered at the PCR hearing could have made a difference in the outcome of his trial.

[Entry #30-17 at 155].

At PCR, Petitioner's parents testified that the Victim's mother needed a place to stay because her electricity was off, it was cold, and they were simply taking care of her. [*Id.* at 2–4]. Petitioner's mother also noted that they wanted to be sure that the Victim's mother was available to testify at trial. [*Id.* at 4]. Trial counsel testified at PCR that he did not call Petitioner's parents to testify because it was clear the parents had an interest in preserving the Victim's mother's favorable testimony and "seeing that she was around for the trial." [*Id.* at 24].

The court finds that trial counsel articulated valid strategic reasons for not presenting evidence or testimony explaining Petitioner's parents allowing the Victim's mother to stay in their home in an effort to protect her credibility and that of the defense. Petitioner has not shown that counsel was deficient in that choice of tactics. Based on the foregoing, Petitioner is not entitled to federal habeas relief on this ground and it is recommended that it be dismissed.

g)     No objection to State's closing argument

Petitioner alleges that counsel was ineffective in failing to object to the State's closing argument where the prosecutor commented on Petitioner's failure to present witnesses as compared to the State's presentation of too many witnesses to count. In his closing argument, Assistant Solicitor Swarat stated, without objection: "The defense has put up one witness, DiAnn Spurck. The State, I believe, we put up about 16, 17 witnesses. I lost count after awhile. You can believe her against every single one if that's your choice." [Entry #30-15 at 33].

The PCR court denied the claim, as follows:

> Applicant asserts trial counsel should have objected to the solicitor's comment during closing that the jury should seriously consider that the State put up 16–17 witnesses and Applicant put up one witness. This Court finds and concludes that Applicant misconstrues the remark. The prosecutor, while discussing credibility, mentioned that the judge would charge them that they could believe some of what a witness says, all of it, or none of it. He also said the jury may believe one witness against many. He then gave the example of the State producing many witnesses in this case and the defense producing one. He told the jury they could believe the one witness over the many. (Trial tr. p. 531, line 16–p. 532, line 9.) This Court finds this remark is consistent with the law and did not shift the burden to the defense as Applicant argues. It was not incumbent on trial counsel to object and this Court declines to find him ineffective for failing to do so.

[Entry #30-17 at 157].

Petitioner's claim of ineffective assistance of counsel is based on the principle that the State cannot comment on a defendant's failure to put up a defense. The court agrees

with the Respondent and the PCR court that Petitioner's argument is misplaced. The relevant portion of the prosecutor's closing argument follows:

> The judge is going to tell you about credibility when he talks to you about it during the law. He will tell you that you can believe some of what a witness says, all of what a witness says or absolutely none of what a witness says. You can believe one witness against many and many witnesses against one. It doesn't make any difference. If you find them to be credible and believable and truthful, you can take that in the jury box, take that in the jury room and base the truth on it, what you find to be credible. The defense put up one witness, Diann Spurck. The state, I believe, we put up about 16, 17 witnesses. I lost count after a while. You can believe her against every single one if that's your choice.

[Entry #30-15 at 32–33].

To be entitled to a new trial for improper closing arguments, the test is whether the Solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *State v. Hamilton*, 543 S.E.2d 586, 596 (S.C. 2001). Federal habeas review is limited to whether the comments rendered the proceeding so fundamentally unfair as to constitute a denial of due process. *Bates, supra*; *Donnelly*, 416 U.S. at 643. This determination requires consideration of "the nature of the comments, the nature and quantum of the evidence before the jury, the arguments of opposing counsel, the judge's charge, and whether the errors were isolated or repeated." *Boyd v. French*, 147 F.3d 319, 329 (4th Cir. 1998).

Petitioner cannot satisfy the *Strickland* test. The court agrees with Respondent and the PCR court that the prosecutor's comment about the number of witnesses was not a comment on Petitioner's failure to testify or to present a defense. Considering the

nature of the Solicitor's comment in context, it was consistent with the judge's charge and the law and did not shift the burden of proof to the defendant.  The court cannot find that the Solicitor's comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Hamilton*, 543 S.E.2d at 596. Independently, the court cannot find that there was a substantial likelihood the result of Petitioner's trial would have been different had trial counsel objected to the isolated remark.  Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams*, 529 U.S. at 410. Based on the foregoing, Petitioner is not entitled to federal habeas relief on this ground and it is recommended that it be dismissed.

### 2.     Actual innocence claim

In his last and unpreserved claim, Petitioner contends he is actually innocent, based upon the Victim's mother's statement that the shooting was an accident.

Petitioner has failed to present a claim for relief on this ground. The court notes that actual innocence is not a cognizable claim for federal habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Id.* ("[F]ederal habeas courts sit to ensure that individuals are not

imprisoned in violation of the Constitution—not to correct errors of fact."). Therefore, the court should deny relief on this ground as not available in federal habeas.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment be granted and the petition be dismissed with prejudice.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

September 26, 2013                              Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).